UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| CALLUM SAVAKUS-MALONE, | : | |
| *INDIVIDUALLY AND ON BEHALF OF* | : | |
| *ALL OTHERS SIMILARLY SITUATED*, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:18-cv-05063 |
| | : | |
| PIRAMAL[1] CRITICAL CARE, INC., | : | |
| MASIS STAFFING SOLUTIONS, LLC, | : | |
| and DOES 1-10, | : | |
| Defendants | : | |

_____

**O P I N I O N**
**Defendant Masis's Motion to Dismiss Amended Complaint, ECF No. 19 – Granted**

**Joseph F. Leeson, Jr.**                                              **July 3, 2019**
**United States District Judge**


I.     **INTRODUCTION**

Plaintiff Callum Savakus-Malone initiated the above-captioned action based on

allegations that he was not paid for time spent donning and doffing protective gear and that he

was forced to forego unpaid meal breaks during his employment at Defendant Piramal Critical

Care, Inc. ("Piramal").  He asserts that Defendant Masis Staffing Solutions, LLC ("Masis") is a

joint-employer with Piramal and is equally liable.  Masis has filed a Motion to Dismiss, arguing

that it is not a joint-employer under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§201, *et*

*seq.* and Pennsylvania's Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101, *et seq.*, and

that the remaining state law claims are insufficiently pled.  For the reasons set forth below, the

Motion to Dismiss is granted without prejudice.

---

[1]        Incorrectly spelled "Primal" on the docket.

## II.    BACKGROUND

Savakus-Malone filed this action on his own behalf and on behalf of all others similarly situated.  The Amended Complaint alleges the following facts. Savakus-Malone is an individual who was employed by Piramal and Masis as an hourly Production Operator from April 2018 to July 2018. *See* Am. Compl. ¶ 26, ECF No. 16. Piramal is a Delaware corporation headquartered in Bethlehem, Pennsylvania and "is a significant producer of inhalation anesthetics, injectable pain and anesthesia drugs, Intrathecal Baclofen therapy for spacity management, and plasma volume expanders." *Id*. at ¶ 27. Masis is a Massachusetts-based limited liability company which provides labor staffing for its clients, including Piramal. *Id*. at ¶ 29.

On or around April of 2018 Masis screened Savakus-Malone as a potential Piramal employee. *See id*. at ¶ 34. Shortly thereafter, Savakus-Malone was offered, and accepted, the opportunity to work for Piramal as a Production Operator at Piramal's Bethlehem, Pennsylvania facility. *Id*. During the course of Savakus-Malone's employment at Piramal, he was instructed to arrive fifteen minutes early, unpaid, to don and doff safety gear necessary to the performance of his job, and to stay an extra fifteen minutes at the end of each shift, unpaid, to remove the safety gear. *See id*. at ¶¶ 39-40. Savakus-Malone was also instructed to forego meal breaks, which he did, although time allotted for meal breaks was automatically deducted from his hours worked. *Id*. at ¶¶ 41-42. Savakus-Malone complained to representatives from Piramal and Masis regarding incorrect pay, but neither Piramal nor Masis corrected the errors. *Id*. at ¶ 13.

On or around July 20, 2018, Savakus-Malone arrived at Piramal's premises and was told that his "contract had ended." *Id*. at ¶ 95. That same day, a Masis representative contacted, or attempted to contact, Savakus-Malone for the purpose of informing him that he no longer

worked at Piramal. *See id.* at ¶ 96. Savakus-Malone was not subsequently offered another employment position by Masis. *Id.* at ¶ 97.

The Amended Complaint asserts six counts: (1) a claim pursuant to 29 U.S.C. § 216(b) of the FLSA for failure to provide overtime pay;[2] (2) a claim pursuant to 29 U.S.C. § 215(a)(3) of the FLSA for retaliation;[3] (3) a violation of Pennsylvania's Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101, *et seq.*; (4) a violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.1, *et seq.*; (5) unjust enrichment pursuant to Pennsylvania common law; and (6) breach of contract pursuant to Pennsylvania common law. Savakus-Malone alleges that Piramal and Masis are in violation of the aforementioned statutes and torts as a result of their failure to pay employees at least one-and-one-half times their regular rate of pay for off-the-clock work performed in excess of forty hours in one work week. *See* Am. Compl. ¶ 141.

The Amended Complaint further alleges that Piramal and Masis are "joint employers" pursuant to the FLSA and PMWA and therefore each have the duty to ensure that the rights provided by these statutes are enforced. *See id.* at ¶ 79. Savakus-Malone alleges, upon information and belief, that Masis facilitated his screening and hiring for work at Piramal. *Id.* at ¶ 82. Savakus-Malone alleges that Masis discussed potential employment at Piramal with him, Masis ran a background check on him, Masis performed employment-related drug screening on him, and a representative from Masis communicated to him the hourly wage he would be paid

---

[2]     The FLSA provides that individuals will be compensated at no less than one-and-one-half times their hourly rate of pay for any time worked in excess of forty hours in one work week. *See* 29 U.S.C. § 207(a)(2)(C).

[3]     The FLSA makes it a prohibited act to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3).

for work performed for Piramal. *See id*. at ¶¶ 83-86. Savakus-Malone alleges, upon information

and belief, that Masis was paid a lump sum by Piramal at the time of his hiring and continued to

receive money from Piramal related to his continued work at Piramal. *See id*. at ¶¶ 87-88.

Savakus-Malone alleges that throughout the course of his employment, Piramal's employees

were responsible for supervising him, he clocked in and clocked out at Piramal's Bethlehem

facility, and a record of his working hours were regularly transmitted by Piramal to Masis. *See*

*id*. at ¶¶ 90-91, 93. Savakus-Malone alleges, upon information and belief, that Masis was

responsible for issuing, and did issue, paychecks to him. *See id*. at ¶ 94. Savakus-Malone alleges,

upon information and belief, that Masis participated in the decision to terminate him and that

Masis has retained records related to him. *See id*. at ¶¶ 99, 101. Savakus-Malone further alleges

that his employment at Piramal was terminated around July 20, 2018, and was communicated to

him by both representatives for Piramal and Masis. *Id*. at ¶ 44.

Masis has filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of

Civil Procedure Rule 12(b)(6).  Masis argues that the FLSA and PMWA claims should be

dismissed because it is not a "joint-employer" of Savakus-Malone with Piramal.  *See* Mot.

Dismiss ¶ 29, ECF No. 19. Further, Masis states that the WPCL and breach of contract claims

should be dismissed because Savakus-Malone fails to sufficiently plead the existence of a

contract and that the unjust enrichment claim fails as a matter of law.[4]

III.    **STANDARD OF REVIEW**

In rendering a decision on a motion to dismiss, this Court must "accept all factual

allegations as true [and] construe the complaint in the light most favorable to the plaintiff."

---

[4]      Jurisdiction is based on federal question; therefore, if the FLSA claim is dismissed, the
Court may decline to exercise supplement jurisdiction of the remaining claims.

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche*

*Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if

"the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff

stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense").  The defendant bears the burden of demonstrating that a plaintiff has failed to

state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750

(3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    ANALYSIS

The first three counts of the Amended Complaint are brought pursuant to the FLSA and

PMWA. These statutes regulate conduct between employees and employers. Because the

definition of "employer" is similarly expansive under both the FLSA and PMWA, "the analysis

for whether an individual constitutes an 'employer' is the same under the PMWA as under the

FLSA." *Schneider v. IT Factor Prods.*, No. 13-5970 2013 US Dist. LEXIS 173583, *13 (E.D.

Pa. December 9, 2013). Masis argues in the Motion to Dismiss that it is not an employer or joint

employer of Savakus-Malone and that these counts must therefore be dismissed.  It further

argues that the remaining counts of the Amended Complaint, which are brought pursuant to

Pennsylvania common law and statutory law, fail to state a claim.

**A.** **Plaintiff has failed to sufficiently plead that Masis is a "joint employer" within the meaning of the FLSA and PMWA.**

The Third Circuit Court of Appeals has created a four-factor test for determining whether a joint employer relationship exists. *In Re Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).[5] These factors are: (1) the alleged employer's authority to hire and fire the relevant employee; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employee's conditions of employment which includes: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes. *Id*. The *Enterprise* court was careful to note that this list is not exhaustive and cannot be "blindly applied" as the sole consideration necessary to determine joint employment. *Id*. Courts may find other facts or allegations which indicate "significant control" and incorporate those facts with the factors of the *Enterprise* test. *See id*. at 470. Further, "total control" is not required, a plaintiff must prove only that the defendant had "significant" control over the plaintiff's employment. *See id*. at 468.

---

[5]     This Court recognizes the Supreme Court's *Darden* test. *See Nationwide Mut. Ins. Co. v. Darden*, 503 US 318, 323 (1992). In *Darden*, the Supreme Court set out a list of non-exhaustive factors to be used in determining whether an employee/employer relationship exists in Title VII cases. However, the Third Circuit holds that the *Enterprise* test, not the *Darden* test, applies to FLSA actions, like the one here. Additionally, in applying *Darden*, the Third Circuit has focused primarily on "which entity paid the employee's salaries, hired and fired them, and had control over their daily employment activities." *Faush v. Tuesday Morning*, 808 F.3d 208, 214 (3d Cir. 2015). Because these factors are similar to those set out in *Enterprise*, and because the respective analyses require examination of many of the same facts, the Court's analysis and conclusion will be the same under either test.

**1. The Amended Complaint does not allege that Masis had significant control over the decision to hire or fire employees for Piramal.**

The first *Enterprise* factor focuses on whether the alleged employer had the authority to hire and fire the employee. This factor was discussed in *Acosta*, where the United States Secretary of Labor moved to make the owner of a Japanese restaurant and the owner's son jointly liable under a "joint employer" theory. *See Acosta v. Osaka Japan Rest., Inc.,* No. 17-1018 US Dist. LEXIS 115960, at *46 (E.D. Pa. July 12, 2018). The *Acosta* court found that merely communicating hiring and firing decisions to employees was insufficient to establish significant control over the hiring and firing processes. In determining that the son did not have the requisite control, the court noted that various employees testified that he communicated to them that they were hired or fired. *Id*. at *42. However, the owner testified that he was the sole individual responsible for hiring staff at the restaurant. *Id*. Further, when asked whether he had the ability to fire employees, the son testified that he would merely "relay the message" from his father to fire employees. *Id*.

Here, Savakus-Malone lists several ways that he believes Masis exerted control over his ability to be hired to work for Piramal. Savakus-Malone alleges that, in or around April 2018, a Masis representative discussed the potential of employment at Piramal with him, Masis ran a background check, Masis conducted drug-screening in connection with employment at Piramal, and Masis communicated Savakus-Malone's hourly compensation to him. *See* Am. Compl. ¶¶ 83-86. However, these actions were taken by Masis prior to Savakus-Malone's employment at Piramal beginning on April 23, 2018. *See* Am. Compl. ¶ 9. After Savakus-Malone began working at Piramal, Masis's limited control over Savakus-Malone ceased. Savakus-Malone does not allege any fact that would tend to show that Masis had any control over the ability to fire him. Instead, Savakus-Malone simply states that, "upon information and belief, Masis

participated in the decision to terminate plaintiff." Am. Compl. ¶ 99. Without factual backing,

this is simply a recitation of one of the elements of the *Enterprise* test and is nothing more than a

legal conclusion, which is insufficient to state a claim. What Savakus-Malone does allege is, like

the owner's son in *Acosta*, Masis "contacted or attempted to contact Plaintiff . . . for the purpose

of informing Plaintiff that Plaintiff no longer worked at Piramal . . . ." Am. Compl. ¶ 96.

However, as in *Acosta*, merely communicating to an employee that he had been terminated does

not show control over the termination. Therefore, this factor does not support a "joint employer"

relationship.

**2.  Savakus-Malone fails to allege Masis had authority to promulgate work rules or to set work conditions for employees at Piramal.**

The second *Enterprise* factor focuses on the alleged employer's authority over work rules

and conditions. Applying this factor, the Third Circuit Court of Appeals has been willing to deny

a motion to dismiss where the moving party had conducted the employee's training. *See*

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014). In *Thompson*, the

employee brought suit under the FLSA for overtime violations against the company that initially

hired her, Security Atlantic Mortgage Company ("Security Atlantic"), and the company to which

she was transferred, Real Estate Mortgage Network ("REMN"). *See id*. at 145. In vacating the

district court's dismissal of the claims, the circuit court noted that the fact REMN had allegedly

conducted the employee's training after she was hired by Security Atlantic but before she was

transferred to REMN indicated "that REMN had at least some authority to promulgate work

rules and assignments even before REMN formally hired [her]." *Id.* At 149 (internal quotations

omitted).

Sufficient control over the employees' work conditions has also been found where one

company provided rules and regulations calculating the employees' pay. *See DiFlavis v. Choice*

8
070219

*Hotels Int'l, Inc.*, No. 18-3914 2019 US Dist. LEXIS 58924, at *14 (E.D. Pa. April 5, 2019). In

*DiFlavis*, the plaintiff, a housekeeper at a Clarion Hotel, brought suit for overtime violations

against that hotel as well as Choice Hotels International, Inc., a corporation which owns multiple

hotel brands, including roughly three hundred Clarion Hotels in thirty-nine states. *See id*. at *2.

The plaintiff asserted that Choice Hotels was her joint employer in large part because Choice

Hotels had significant control in establishing and implementing rules and regulations regarding

the compensation, hours of work, overtime, scheduling, and timekeeping of Clarion employees.

*See id*. at *4. In denying Choice Hotel's motion to dismiss, the court found that Choice Hotels'

requirement that its hotels follow the Rules and Regulations, regarding which Choice Hotels

performed visits to assure and evaluate compliance therewith, was sufficient to establish that

Choice Hotels had significant authority to promulgate work conditions. *See id*. at *14.

Here, Savakus-Malone fails to allege facts that would tend to show that Masis had the

authority to promulgate work conditions. Savakus-Malone alleges only that "[u]pon information

and belief," Masis played a role in determining the compensation, benefits, and work hours for

the joint employees. *See* Am. Compl. ¶ 82. Because Savakus-Malone's allegations do not have

factual backing, they are not entitled to the presumption of truth. Also, while the Amended

Complaint alleges that Masis communicated Savakus-Malone's pay rate to him, it does not

allege that Masis had the authority to set the rate of pay. *See* Am. Compl. ¶ 86. Moreover,

Savakus-Malone alleges, upon information and belief, that it was Piramal who controlled the

terms of his employment, including scheduling, supervision, oversight, directives, initiatives,

and/or expectations. *See* Am. Compl. ¶ 89. Unlike the authority that Choice Hotels maintained

over Clarion employees in *DiFlavis*, the Amended Complaint does not allege that Piramal

possessed the same authority.  Rather, the allegations appear to show that Piramal, not Masis,

had the significant control over work conditions required to be an "employer" under the FLSA.

Thus, Savakus-Malone has failed to satisfy the second element of the *Enterprise* test to show a

"joint employer" relationship.

### 3. Savakus-Malone essentially concedes that Piramal, not Masis, had sole involvement in his day-to-day supervision.

The third *Enterprise* factor focuses on the amount of control the alleged employer had

over the employee's day-to-day activities. The Third Circuit Court of Appeals has found that

where one company cedes supervision of an employee to another company, that fact disfavors a

finding that the first company was an employer. *See Yue Yu v. McGrath*, 597 Fed. App'x 62, 68

(3d Cir. 2014). In *Yue Yu*, Bristol-Meyers Squibb ("BMS") contracted with GfK Healthcare

("GfK") for help in locating a marketing research consultant. *Id*. at 64. Yu interviewed with

representatives of GfK and BMS and the two companies subsequently entered into a contract for

Yu's consulting services. *Id*. When BMS challenged their status as Yu's employer, the Third

Circuit Court of Appeals determined that BMS was involved in Yu's day-to-day supervision as it

oversaw her projects and received timesheets for approval, and because Yu attended BMS

marketing team meetings for her projects. *Id*. at 66. However, the circuit court found that the

factor did not weigh totally in Yu's favor because BMS had, to some extent, ceded its

supervision of Yu to GfK. *See id*. Whenever BMS had issues with Yu's performance, they

discussed them with GfK, who in turn worked with Yu to improve her performance. *Id*. Because

the other factors weighed in favor of BMS, the Third Circuit Court of Appeals concluded that the

district court properly found no employment relationship. *Id*.

Here, Savakus-Malone essentially concedes that Piramal was in control of his day-to-day

supervision. *See* Am. Compl. ¶ 89. Unlike the company in *McGrath*, Piramal was responsible for

supervising Savakus-Malone while he worked at Piramal. *See* Am. Compl. ¶ 90. Further,

Savakus-Malone clocked in and clocked out at Piramal's facility. *See* Am. Compl. ¶ 91. The

Amended Complaint also shows that Savakus-Malone used Piramal's facilities and equipment in

performance of his job as a Production Operator.[6] *See* Am. Compl. ¶¶ 36, 39-40 (alleging that

Savakus-Malone mixed Piramal's chemicals, refilled raw material storage tanks, moved transfer

tanks with industrial equipment, and donned and doffed safety gear at Piramal's facility).

Accordingly, the third *Enterprise* factor weighs against a finding that Masis was a "joint

employer."

### 4.    Savakus-Malone has alleged that Masis had actual control over his employee records.

The fourth *Enterprise* factor focuses on "the alleged employer's actual control over

employee records, such as payroll, insurance, and taxes." *Enterprise*, 683 F.3d at 469. In

*Enterprise*, Enterprise Holdings, the sole shareholder of thirty-eight domestic subsidiaries,

claimed that it was not an employer of an employee who worked for one of the aforementioned

subsidiaries. *See id*. at 464. In affirming the district court's decision to grant summary judgment,

the Third Circuit Court of Appeals found no evidence to indicate that Enterprise Holdings

exercised any control over the records of subsidiary employees. *See id*. at 471.

Here, Savakus-Malone states that ""[u]pon information and belief, Masis was responsible

for issuing, and did issue, Plaintiff's paychecks . . . ." *See* Am. Compl. ¶ 94. Savakus-Malone

also alleges that a record of his working hours was regularly transmitted by Piramal to Masis. *Id*.

at ¶ 93. Read in the light most favorable to Savakus-Malone, these allegations indicate that Masis

did in fact exert control over Savakus-Malone's records.  Savakus-Malone also alleges that, upon

---

[6]    *See Novielli v. Trec Group*, No. 16-1247, 2017 US Dist. LEXIS 33982 (E.D. Pa. March 9, 2017) (finding evidence that the defendant employed the plaintiff where the plaintiff worked at the defendant's facility, used the defendant's computer and printer, and was interviewed, supervised, and disciplined by the defendant).

information and belief, "Masis retained records related to plaintiff." *See* Am. Compl. ¶ 101.

Masis's retention of records related to Savakus-Malone, if supported by facts, would not

necessarily weigh in his favor because this appears to be a common action among staffing

agencies and, absent some other evidence, does not necessarily weigh in favor of finding that

Masis is Savakus-Malone's employer. However, the fact that Piramal transmitted records of

Savakus-Malone's working hours to Masis, and then Masis was responsible for issuing Savakus-

Malone's paychecks indicates that Masis exerted control over Savakus-Malone's employee

records and supports a joint employer relationship.[7]

5.      **The Amended Complaint does not provide any other relevant facts which would influence the determination of Masis's status.**

Weighing the four *Enterprise* factors, Savakus-Malone has failed to allege sufficient

factual allegations to show that Masis is a joint employer with Piramal.  However, the *Enterprise*

court was careful to caution against blind application of the *Enterprise* factors. *See Enterprise*,

683 F.3d at 469. Courts in the Third Circuit have found a variety of other circumstances which

aided in the determination of employment statuses. *See Safarian v. Am. DG Energy, Inc.,* 729

Fed. App'x 168, 174 (3d Cir. 2018) (finding that the fact that plaintiff was required to attend

business meetings, was given business cards and a company email address, and needed the

business's permission to take vacation could weigh in favor of finding that the business was an

employer); *Thompson*, 748 F.3d at 149 (suggesting that an employee referring to another

business as the business's "sister company" could indicate a joint employer relationship);

*Bedolla v. Brandolini*, No. 18-146, 2018 US Dist. LEXIS 83815, *3 (E.D. Pa. May 18, 2018)

(holding that defendant's requirement that the plaintiff wear shirts and jackets which bore the

---

[7]      The Amended Complaint does not reference anything relating to Savakus-Malone's taxes or insurance.

company logo might indicate significant control); *Acosta*, 2018 US Dist. LEXIS 115960, at *45 (noting the fact that the owner's son was involved in implementation of the restaurant's tip system may indicate control).

Nevertheless, the only relevant allegations brought by Savakus-Malone which do not fall within one of the *Enterprise* factors which might indicate a joint employer relationship are that Masis was paid a lump sum when Piramal hired Savakus-Malone, and that Masis continued to receive payments from Piramal related to Savakus-Malone's employment. *See* Am. Compl. ¶¶ 87, 88. However, these allegations are problematic for Savakus-Malone for two reasons. First, these allegations are brought "upon information and belief" with no further explanation. Second, Savakus-Malone fails to explain how these interactions are different than the interactions between any staffing agency and the companies that it finds employees for. Accordingly, these allegations are insufficient to show a joint-employer relationship.

Counts I, II, and III, alleging violations of the FLSA and/or PMWA are dismissed against Defendant Masis.  The dismissal is without prejudice, however, because Savakus-Malone may be able to assert additional factual allegations, as opposed to conclusory statements and "upon information and belief" allegations, to support a finding that Masis was a joint-employer.

**B.     Savakus-Malone's state law claims against Masis are also dismissed.**

Because the federal question claim has been dismissed as to Masis, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims against Masis. However, because the FLSA claim remains in the above-captioned action as to Piramal, the

Court is inclined[8] to exercise supplemental jurisdiction over all state-law claims and therefore addresses the Motion to Dismiss these claims against Masis.

In Count IV, Savakus-Malone alleges a violation of the WPCL for Defendants' failure to compensate him for unpaid time spent donning and doffing protective gear and for being forced to forego meal breaks. But, the WPCL creates a statutory remedy for breach of a *contractual obligation* to pay wages. *See Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) ("The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement."). Although an implied contract may be sufficient to support a claim under the WPCL, the allegations of the Amended Complaint are not sufficient to state that Savakus-Malone and Masis entered into such a contract. Savakus-Malone points to the allegations in paragraph 170, but the allegations in this paragraph are conclusory and not entitled to the presumption of truth. Further, for the reasons discussed herein as to why Masis is not a joint employer, the conclusory allegations in paragraph 170 are not supported by specific factual allegations. At most, the Amended Complaint alleges that Savakus-Malone and Piramal entered into an implied contract. *But see De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 305 (3d Cir. 2003) (commenting that although the plaintiffs argued that the WPCL action was grounded in an implied contract between them and Tyson, Tyson averred that it made no promise to pay its employees for donning and doffing time). The WPCL claim is therefore dismissed.

---

[8]     Because the FLSA claim against Masis is dismissed without prejudice, the Court reserves its decision over supplemental jurisdiction pending the filing of a Second Amended Complaint.

For the same reasons, the breach of contract claim in Count VI is also dismissed. *See McShea v. City of Philadelphia*, 606 Pa. 88 (2010) ("The necessary material facts that must be alleged for such an action are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach.") (citing *Hart v. Arnold*, 884 A.2d 316, 322 (Pa. Super. 2005)).

Finally, Savakus-Malone's unjust enrichment claim is dismissed because he has failed to sufficiently allege how his unpaid hours conveyed a benefit to Masis. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) ("The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."). As previously discussed, the Amended Complaint fails to show that Masis is a joint employer. Accordingly, there are insufficient allegations that Masis received any benefit from Savakus-Malone for working for Piramal.

Although the Court seriously doubts that Savakus-Malone will be able to allege additional factual allegations to support any of these state-law claims against Masis, because the FLSA claim is being dismissed without prejudice, these claims too will be dismissed without prejudice.

## V.     CONCLUSION

The Amended Complaint, which relies heavily on "upon information and belief" statements and legal conclusions, fails to sufficiently allege that Masis exercised "significant" control over Savakus-Malone to constitute a joint employer under the FLSA or PMWA and these claims are dismissed. For this reason and because there are insufficient allegations of an implied

contract between Masis and Savakus-Malone to compensate him for time spent donning and doffing protective gear at Piramal's facility, the remaining state-law claims against Masis are also dismissed. This Court questions whether Savakus-Malone will be able to cure the deficiencies identified herein, but will give him one final opportunity to amend his pleadings. Savakus-Malone is advised, however, not to reassert any claim unless he has sufficient factual allegations in support.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge